PEOPLE, PLAINITFF AND APPELLEE, *v.* GARCÉS, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Mayagüez in a Prosecution for Murder in the Second Degree.

No. 1573.—Decided July 29, 1921.

MURDER—DEGREES OF MURDER.—If the act resulting in the death of another person and charged as murder is not one of those specifically enumerated in section 201 of the Penal Code and there was no intention to kill, the murder may be in the second degree; but any act which is malicious, premeditated and deliberate and causes the death of a human being is murder, either in the first or second degree. Hence, as the absence of an intention to kill may reduce the crime from murder in the first degree to murder in the second degree, to charge that the act was malicious, premeditated and deliberate, rather than so to describe the actual killing, constitutes a charge of murder in the second degree.

ID.—NEW TRIAL—WAIVER.—The defendant moved for a new trial on the ground of the improper admission and exclusion of evidence, but made absolutely no specification in his motion of what these errors were. By this omission the defendant waived the errors in the admission and exclusion of evidence and this court would not reverse the judgment unless it found a fundamental error in the admission and exclusion of evidence.

ID.—INSTRUCTIONS TO JURY.—No exception was taken to the instructions to the jury, and while more might have been said by the court, not only were the instructions sufficient generally, but the defendant also asked for specific instructions and they were granted and given as requested.

ID.—ID.—It is not error for the court, unsolicited by the jurymen, to call them back for further instructions.

The facts are stated in the opinion.

*Mr. Angel A. Vázquez* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This is an appeal from a conviction of murder in the

second degree. After the trial the defendant made a motion in arrest of judgment which was overruled, and this action of the court is assigned as the first error.

The object of the motion in arrest of judgment was to insist that the information failed to set up a charge of murder. The information is essentially as follows:

"The district attorney files this information against Plácido Garcés Zapata for the crime of murder, a felony, committed as follows:

"On or about the night of the 9th day of May, 1919, and in the town of Lajas, P. R., within the jurisdiction of the District Court of Mayagüez, P. R., the said Plácido Garcés Zapata did then and there unlawfully, wilfully, with malice aforethought and with a fixed and deliberate purpose, showing that he had a wicked and perverted heart, assault and attack Carmen Juana Delgado y Lugo, a human being, with a razor, inflicting a wound in her throat above the trachea which divided all the soft parts of that region and extended below the larynx, thus unlawfully causing the death of the said Carmen Juana Delgado y Lugo, who was the wife of the accused. This act is contrary to the law for such cases made and provided and against the peace and dignity of The People of Porto Rico."

The theory of the appellant is that the information fails to allege that the defendant, with malice aforethought, killed his said wife; more specifically, that an averment that the defendant, with premeditation and deliberation, cut his wife's throat is not the equivalent of the averment that, with premeditation and deliberation, he killed his said wife.

Sections 199, 200 and 201 of the Penal Code contain the definition of murder and its division into degrees, as follows:

"Sec. 199.—Murder is the unlawful killing of a human being with malice aforethought.

"Sec. 200.—Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

"Sec. 201.—All murder which is perpetrated by means of poison, lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, is murder of the first degree, and all other kinds of murders are of the second degree."

According to the authorities, if a man inflicts a blow on another with malice aforethought and causes death, this may be murder, depending upon the circumstances as developed in the information itself or at the trial. *Demato* v. *People,* 35 L. R. A. (N. S.) 621, and notes; 13 R. C. L. 777; *People* v. *Figueroa,* 16 P. R. R. 354; 21 Cyc. 712.

It is sufficient that the act done was malicious, deliberate and premeditated and caused death. If there was an intention at the time to cause death or the act informed against is one of those specifically enumerated in the law as constituting murder in the first degree, the defendant may be convicted of murder in that degree. If the act informed against is not one of those specifically enumerated in section 201 of the Penal Code and there was no intention to kill, the murder may be in the second degree, but any act which is malicious, premeditated and deliberate and causes death is bound to be murder in the first or second degree.

The only thing, then, that the defendant could complain of, if the information fails to state that the killing itself was malicious, deliberate and premeditated, would be that the information failed to set out the facts from which murder in the first degree might be inferred. Such a state of things is not true of the present information, but therein it is said that the defendant deliberately and maliciously and with premeditation assaulted and battered Carmen Juana Delgado with a razor, cutting her in the neck so deeply and severely that the thrust penetrated to the larynx. The natural ordinary inference from the cutting of the throat of another human being, as described in the information, is that the

defendant intended the death of his victim. To "cut the throat" (*degollar*) of a person is the equivalent in the language of killing a person. The only doubt that we might have would be whether the facts as charged in the information, if proved, would constitute anything but murder in the first degree. Where a man deliberately and premeditatedly cuts the throat of his wife, the question would be whether he should not be presumed to have intended her death. Section 199 of the Penal Code does not distinctly say that the killing must be deliberate and premeditated, but the conjunctive "with" indicates that the killing must be accompanied by malice deliberate and premeditated, and where the act is deliberate, malicious and premeditated and causes death, it falls within the definition of murder. The information before us fully describes a deliberate, malicious and premeditated act as accompanying or preceding the death. As there must always be an act to precede death, necessarily the deliberation and premeditation applies to the act itself rather than resultant killing. The expert for the defendant in this case testified to the fact that a person with his throat cut might walk several meters, which means that a period of time must ensue between the act and the death. The malice, premeditation and deliberation begin with the act and accompany it to its final result. It should be added that the information told the defendant that he was charged with "murder" and such a characterization may aid the doubtful expressions of an information.

The jurisprudence being clear that the absence of an intention to kill may reduce the crime from murder in the first degree to murder in the second degree, any possible aspect of the case to accompany the act complained of with the words malicious, premeditated and deliberate, rather than so to describe the actual killing, would still show facts in the information charging murder in the second degree. The defendant was convicted of murder in the second degree and

we can not say that the judgment does not follow the information.

The second ground of error is the failure of the court to grant a new trial. This error is divided into six parts, the first of which we have already discussed. In the motion for a new trial, as in this court, under paragraph (*b*) the appellant grouped all the acts of the court in the admission and exclusion of evidence. That is to say, the appellant asked for a new trial on the ground of the improper admission and exclusion of evidence, but in his motion for a new trial he made absolutely no specification of what these errors were. Strictly speaking, by this failure the defendant waived the errors in the admission and exclusion of evidence, and we should not reverse the case unless we found a fundamental error so far as such admission or exclusion is concerned. The court refused to permit witnesses to say that the deceased person or her father was insane (*bobo*), on the theory that the witnesses should give facts and not characterizations. It is true that counsel for the defendant had announced at the opening of his case that he intended to prove that the deceased person suffered from epileptic attacks and was a descendent of idiots and insane people. The theory of the defense was that the slain woman committed suicide. Part of the theory of the court in excluding references to her father was that it should first be proved that she was insane, but in any event the court was right in excluding opinions of witnesses who were not experts and who did not first speak of facts from which they deduced her alleged insanity or the insanity of her ancestors. The court did not at all attempt to stop the defendant from introducing evidence as to the epileptic attacks or other acts of Juana Delgado tending to show irresponsibility or a disposition to commit suicide, or any other similar fact. The counsel for the appellant complains that the court intervenes at times *sua sponte,* but this was generally done after the

court had already intimated what line of questions should be excluded.

The appellant also says that the reason for objections to evidence should be formulated at the time the evidence is being ruled upon by the court. However, the court may at any time exclude evidence which it considers improper, and its action will be justified if it appears that the evidence was properly excluded. It is almost entirely the party who complains of evidence that he wishes excluded who must state his objections to the court. Much time is frequently saved in a court by an objection made by an attorney and the objection instantly sustained where it was apparent that the offered evidence is inadmissible. The court will always hear the party against whom the ruling is made, provided that a line of action has not already been established at the trial. The successful party, however, needs no other support than the action of the court itself.

The appellant also complains that his expert was not allowed to state generally what was an epileptic attack. This, as an hypothetical question, was plainly erroneous.

The appellant having given testimony tending to show that the defendant and his wife lived in harmony, on rebuttal the government offered evidence showing that a justice of the peace had once to intervene in a quarrel between them. We find no error or prejudice in the admission of this evidence.

The other matters alleged in regard to admission or exclusion of evidence need no special mention.

Under (c) the appellant complains of the failure of the court to instruct sufficiently on the matter of circumstantial evidence. The instruction of the court in this regard was as follows:

"The court instructs the jury that in order to find the defendant guilty on circumstantial evidence alone it is necessary not only that all of the facts unite to show that he committed the crime

with which he is charged, but that the said facts be incompatible with any other reasonable conclusion. It is not sufficient that the facts proved should coincide, agree and render probable the hypothesis sought in order to establish the charge made in the information, but they must show guilt beyond any other hypothesis, and each separate fact from which the deduction of guilt must be made should be proved by evidence which satisfies the conscience of the jury in the same degree that it is necessary to satisfy it regarding the act in question if the evidence had been direct.''

We find that this was an ample instruction on circumstantial evidence.

We also find sufficient the instruction on reasonable doubt, which we find unnecessary to quote.

Error is complained of in regard to the instruction of murder in the second degree, and the case of *People* v. *Roldán* is cited, but in that case the court defined murder in the second degree as a crime committed without premeditation and deliberation, the characteristic of all murders. In the instant case the court did not fail to say that premeditation and deliberation were essential to murder in the second degree. The court defined murder in the first degree as being with express malice, but that murder in the second degree existed when the malice was implied; but the court did not fail, as we have said, to include the elements of deliberation and premeditation. Indeed, to say that murder in the second degree existed when the malice was implied is probably to give the defendant a little more than he had a right to expect. We think it will be found that murder in the first degree may exist under the definition of section 200 of the Penal Code where malice is implied.

Appellant also complains that the whole tenor of the instructions was against the defendant, inasmuch as much emphasis was made upon murder in the first and in the second degree and very little said about what the jury should do in case they had a reasonable doubt as to the guilt of the defendant. However, in every trial it is more or less neces-

sary for the court to explain at some length murder in the first and murder in the second degree, while few words are only necessary to say what the jury must do if they have a reasonable doubt of the guilt of the defendant, and the court instructed the jury in what was necessary to convict the defendant on circumstantial evidence, excluding any other reasonable conclusion, and did this several times.

The court said that the law presumed that every man was innocent, and that unless they believed that his guilt had been proved beyond a reasonable doubt, or if there should exist a reasonable doubt of his guilt, it was the duty of the jury to give him the benefit of the doubt and to declare him not guilty.

In regard to all these instructions, moreover, no exception was taken, and while, as almost invariably happens, other things might have been said by the court, yet not only were the instructions sufficient in general, but the defendant also asked for specific instructions, all of which were granted and given in the words asked for or in their equivalent.

After the jury went out, for some reason that does not appear on the face of the record the court called the jury back to give them additional instructions and principally to say that they must consider the evidence and allow no extraneous matter to affect them. We have carefully examined these additional instructions and find nothing therein that should have prejudiced the defendant. The right of the court to recall the jury is clear (*People* v. *Perry,* 65 Cal. 568) and we should only reverse in case of a conviction that the additional instructions had prejudiced the defendant. Indeed, the additional instructions of the court would apply equally to the instructions already given that the jury must not allow the fact that the defendant himself did not testify to affect their deliberation.

The last error complained of is that the evidence is contrary to the verdict. In this regard the appellant does not

sum up the evidence, but simply refers us to some of the
contradictions in the proof and some of the alleged contra-
dictory evidence among the government's own witnesses, but
without giving us an idea of what really happened in the
case except so far as is set forth in the information. The
*fiscal,* answering the defendant, likewise fails to help the
court, inasmuch as he refers us to the record in general
without attempting to sum up the evidence. We find the
evidence was sufficient. It tended to show that on a certain
night the defendant and his wife being in a room alone with
two small children, the wife met her death; that her throat
was cut through by two blows; that the razor which in-
flicted the wound was found away from the spot where she
fell, closed and behind the bed; that the defendant was found
with his hands somewhat soiled with blood and his nails
still showing signs of blood; that the defendant said that
his wife had committed suicide and that some of the blood
had fallen on him when he caught her after she had given
several leaps. This was, with perhaps more, the undisputed
evidence in the case. An expert for the government testi-
fied that from the nature of the wound it was his opinion
that it could not have been self inflicted. This was con-
tradicted by the expert for the defendant. Besides, there
was evidence of a boy twelve years old who said he heard
the defendant and his wife quarreling at or about the time
of the murder and that she said "Don't kill me. I will kill
myself." The credibility of this witness was attacked, and
is not very satisfactory, but was a question for the jury.
Likewise another witness said he heard them quarreling on
the road on the day of the alleged killing, and it was at-
tempted to be proved by a credible witness that the position
where he said he was was an impossible one. The defense
was on the ground of suicide and there was very little evi-
dence introduced to justify it. Quite a little evidence of epi-
leptic attacks there was, but not sufficient to cause a serious

doubt whether the blows were not self-inflicted, and of course the jury had a right to infer that the death was not due to the act of Juana Delgado herself.

The judgment must be

*Affirmed.*

Chief Justice Hernández and Justices Del Toro and Aldrey concurred.

Mr. Justice Hutchison concurred in the judgment.